IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:        4:11cr32/RH/GRJ
                                                          4:13cv236/RH/GRJ

JAMES ALEXANDER MURPHY

_____

## REPORT AND RECOMMENDATION

This matter is before the court upon Petitioner's Motion under § 2255
to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody
and supporting memorandum of law. (ECF Nos. 51, 52.)  The Government
has responded (ECF Nos. 61, 65) and Defendant filed a reply.  (ECF No.
66).  After a careful review of the record and the arguments presented, the
Court concludes that Petitioner has not raised any issue requiring an
evidentiary hearing and that the § 2255 motion should be denied.  *See*
Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Petitioner Jamey Alexander Murphy was the lone Defendant charged
in a three count indictment with conspiracy to possess with intent to
distribute five kilograms or more of cocaine ("Count One"), possession with
intent to distribute five hundred grams or more of cocaine on May 9, 2011

("Count Two") and possession of firearms in furtherance of a drug trafficking crime on that same date ("Count Three").  (ECF No. 9.) Represented by attorney Armand Garcia, Murphy pleaded guilty to the three counts pursuant to a written plea agreement without a separate statement of facts.   (ECF Nos. 20, 21; ECF No. 42 at 7.)

At the change of plea proceeding, the Government orally set forth what it believed it could prove at trial.  (*See* ECF No. 42 at 7.)  In brief, after investigation into Murphy's narcotic-trafficking activities, law enforcement obtained and executed a search warrant on a storage unit Murphy used from which they recovered a plastic cooler containing two and a half kilograms of cocaine and two firearms.  (ECF No. 42 at 10.) Upon inquiry by the court, Murphy admitted ownership of the cocaine and the firearms.  (ECF No. 42 at 11).  The Government further explained that after Murphy's arrest, investigators obtained a search warrant for a storage unit at a different location, where they discovered another weapon and nineteen bundles of United States currency.  (ECF No. 42 at 13.)  Murphy also admitted ownership of the firearm and the currency totaling approximately $190,000.  (ECF No. 42 at 14.)  A search of Murphy's home

yielded approximately $3,000 in currency, which Murphy admitted was drug proceeds.  (ECF No. 42 at 19.)

The Court advised Murphy that unless he received a substantial assistance motion he faced a minimum sentence of ten years and up to a maximum of life on Counts One and Two, followed by a consecutive five year term on Count Three.  (ECF No. 42 at 20–26.)  Murphy confirmed that he understood the rights he was waiving by entering a plea of guilty, including any defense that he might have had.  (ECF No. 42 at 4–6.)  Murphy also assured the Court that he had had adequate time to talk to his lawyer, that counsel had answered all his questions, that he was satisfied with counsel's performance, and that he had no questions.  (ECF No. 42 at 28.)  The Court accepted Murphy's guilty plea.  (ECF No. 42 at 29.)

The Presentence Investigation Report assessed Murphy's total offense level at 35.  With a criminal history category of III the applicable guidelines range as to Counts One and Two was 210 to 262 months, followed by the mandatory 60 month consecutive term on Count Three.  (ECF No. 26).   The court sentenced Murphy at the low end of the guidelines range to a total term of 270 months imprisonment.  (ECF Nos. 29, 46.)

Murphy appealed, arguing that the district court did not make an individualized finding regarding the drug quantity reasonably foreseeable to him and that the length of his sentence was unreasonable.  (ECF No. 48.) The Eleventh Circuit affirmed, and the Supreme Court denied certiorari. (ECF Nos. 48–50.)

Petitioner timely filed the instant motion under 28 U.S.C. § 2255 raising a single ground for relief.  He claims that counsel was constitutionally ineffective for failing to challenge the search, which led to his plea being unknowing and involuntary as it was based on erroneous advice.

## LEGAL ANALYSIS

### *General Standard of Review*

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th

Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may

often be proved by different factual allegations . . . or supported by different

legal arguments . . . or couched in different language . . . or vary in

immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a

substitute for direct appeal, and issues which could have been raised on

direct appeal are generally not actionable in a section 2255 motion and will

be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v.

United States, 523 U.S. 614, 621 (1998);  McKay v. United States, 657

F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal

when its merits can be reviewed without further factual development."

Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a

showing that the ground of error was unavailable on direct appeal, a court

may not consider the ground in a section 2255 motion unless the

defendant establishes (1) cause for not raising the ground on direct appeal,

and (2) actual prejudice resulting from the alleged error, that is,

alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234;

Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural

default, a defendant must show that "some objective factor external to the

defense prevented [him] or his counsel from raising his claims on direct

appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Franklin, 694 F.3d 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  Strickland's two part test also applies to guilty pleas. Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)).  A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial.  *Id* at 1384–85 (quoting Hill, 474 U.S. at 59).

A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.  Pericles v. United States, 567 F. App'x 776, 782 (11th Cir. 2014) (quoting Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991)) ; Rosin v. United States,786 F.3d 873 (11th Cir. 2015).  A defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  Padilla v. Kentucky, 559 U.S. 356, 372 (2010).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; see also Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's

conduct fell within the wide range of reasonable professional assistance."

Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting

Strickland, 466 U.S. at 689); see also Chandler v. United States, 218 F.3d

1305, 1315–16 (11th Cir. 2000) (discussing presumption of

reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d

362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to

error-free representation").  Counsel's performance must be evaluated with

a high degree of deference and without the distorting effects of hindsight.

Strickland, 466 U.S. at 689.  To show counsel's performance was

unreasonable, a defendant must establish that "no competent counsel

would have taken the action that his counsel did take."  Gordon v. United

States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler,

218 F.3d at 1315.  When reviewing the performance of an experienced trial

counsel, the presumption that counsel's conduct was reasonable is even

stronger, because "[e]xperience is due some respect."  Chandler, 218 F.3d

at 1316 n.18.

With regard to the prejudice requirement, defendant must establish

that, but for counsel's deficient performance, the outcome of the

proceeding would have been different.  Strickland, 466 U.S. at 694.  "The

likelihood of a different result must be substantial, not just conceivable."
Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland).  For
the court to focus merely on "outcome determination," however, is
insufficient; "[t]o set aside a conviction or sentence solely because the
outcome would have been different but for counsel's error may grant the
defendant a windfall to which the law does not entitle him."  Lockhart v.
Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr.,
611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish
"that counsel's errors were so serious as to deprive the defendant of a fair
trial, a trial whose result is reliable."  Lockhart, 506 U.S. at 369 (quoting
Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a
defendant must demonstrate that there is a reasonable probability that, but
for counsel's errors, the result of the proceeding would have been less
harsh due to a reduction in the defendant's offense level.  Glover v. United
States, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is
not required to establish prejudice, as "any amount of actual jail time has
Sixth Amendment significance."  Id. at 203.

    To establish ineffective assistance, Defendant must provide factual
support for his contentions regarding counsel's performance.  Smith v.

White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory

allegations of ineffective assistance are insufficient to satisfy the Strickland

test.  *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34

(11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir.

2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson

v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger,

941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899

(11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles

and presumptions set forth above, "the cases in which habeas petitioners

can properly prevail . . . are few and far between."  Chandler, 218 F.3d at

1313.  This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether

some reasonable lawyer could have acted in the circumstances as defense

counsel acted.  Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d

1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have

been unwise in retrospect, the decision will be held to have been

ineffective assistance only if it was 'so patently unreasonable that no

competent attorney would have chosen it.'"  Dingle, 480 F.3d at 1099

(quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).  Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b);  <u>Rosin v. United States</u>,786 F.3d 873, 877 (11th Cir. 2015); <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.  <u>Gordon</u>, 518 F.3d at 1301 (citing <u>Vick v. United States</u>, 730 F.2d 707, 708 (11th Cir. 1984)).  To be entitled to a hearing, a defendant must allege facts that, if true would prove he is entitled to relief.   *See* <u>Hernandez</u>

v. United States, 778 F.3d 1230, 1234 (11th Cir. 2015).  A hearing is not

required on frivolous claims, conclusory allegations unsupported by

specifics, or contentions that are wholly unsupported by the record.  *See*

Winthrop–Redin v. United States, 767 F .3d 1210, 1216 (11th Cir. 2014)

(explaining that "a district court need not hold a hearing if the allegations [in

a § 2255 motion] are ... based upon unsupported generalizations") (internal

quotation marks omitted); Peoples v. Campbell, 377 F.3d 1208, 1237 (11th

Cir. 2004).  Even affidavits that amount to nothing more than conclusory

allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.  Finally,

disputes involving purely legal issues can be resolved by the court without

a hearing.

### *Ground One*

Petitioner contends that his attorney was constitutionally ineffective

because he "basically coerced petitioner into accepting a plea of guilty,"

instead of seeking to suppress evidence that was obtained via GPS

tracking system, as Petitioner requested that he do.  (ECF No. 52 at 2.)

"A guilty plea, since it admits all the elements of a formal criminal

charge, waives all non-jurisdictional defects in the proceedings against a

defendant."  United States v. Brown, 752 F.3d 1344, 1347 (11th Cir. 2014)

(quoting United States v. Fairchild, 803 F.2d 1121, 1124 (11th Cir.1986)

(quoting United States v. Jackson, 659 F.2d 73, 74 (5th Cir.1981)); *see*

*also* United States v. Patti, 337 F.3d 1317, 1320 (11th Cir.2003)

("Generally, a voluntary, unconditional guilty plea waives all

non-jurisdictional defects in the proceedings.").  This waiver includes

constitutional claims, including ineffective assistance of counsel claims

relating to pre-plea issues, although an attack on the voluntary and

knowing nature of the plea can be sustained.  *See* Tollett v. Henderson,

411 U.S. 258, 267 (1973) (individual who pleads guilty may "attack the

voluntary and intelligent character of the guilty plea").  If a prisoner pleads

guilty on the advice of counsel, in order to be entitled to collateral relief, "he

must demonstrate that the advice was not 'within the range of competence

demanded of attorneys in criminal cases.'" Tollett, 411 U.S. at 267 (quoting

McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763

(1970)); *see also* United States v. Glinsey, 209 F.2d 386, 392 (5th Cir.

2000) ("A voluntary guilty plea waives ... claims of ineffective assistance of

counsel except insofar as the ineffectiveness is alleged to have rendered

the guilty plea involuntary."); *cf.* Wilson v. United States, 962 F.2d 996, 997

(11th Cir. 1992) (by pleading guilty, defendant waived ineffective

assistance of counsel claims as it involved preplea issues).  Petitioner

acknowledges that a plea of guilty waives "most" defects in the

proceedings, but argues that if counsel's failure to know the law is the

cause of the waiver, as he argues in this case, a defendant cannot be held

accountable for the waiver or omission.  (ECF No. 52 at 2).  Petitioner's

own representations, however, weigh against his suggestion that there was

no waiver.

     In his initial § 2255 motion, Petitioner claims that he told counsel that

law enforcement had failed to secure a warrant before placing a GPS

tracking device on his vehicle while it was parked at his mother's

residence, where Petitioner also resided.  (ECF No. 52 at 3.)  In response,

counsel allegedly told Petitioner that this was "legal," and that his best

alternative was to plead guilty and cooperate with the Government.  (ECF

No. 52 at 3.)  Petitioner says that since he believed there was no defense

to the charges, he accepted counsel's position that it was best to plead

guilty.  He maintains that had he been aware that attachment of the GPS

device was considered a search that required a warrant, there was "no way

[he] would have pleaded guilty" but instead he would have proceeded to

trial.  (ECF No. 52 at 3.)  Petitioner takes the position that because agents

did not obtain a warrant before attaching the GPS device, any fruits of this search would have been subject to suppression.

Neither the Government's recitation of the facts in this case, nor the statement of facts in the PSR mentions the Government's use of a GPS tracking device.  Substantively, the Government's response includes no analysis of the merits of the purported fourth amendment claim.  An affidavit from Petitioner's former attorney states only that he "[does] not recall Mr. Murphy requesting that we challenge police use of a GPS devise [sic] in his case prior to the time of his entering a guilty plea."  (ECF No. 61-1).

In Petitioner's response, he paints a picture of himself as a savvy client, who was familiar with legal developments on this issue and took the lead in trying to convince his attorney of the merits of filing a motion to suppress.  He asserts that counsel "ignored his request to seek to suppress the search based on the GPS being placed on his vehicle," and that he "alerted [counsel] to developments in the other district courts concerning challenges to a GPS device being placed on defendant's automobile."  (ECF No. 66 at 1–2.)  Petitioner also claims he learned of a "challenge in the Eleventh Circuit concerning the placement of such a

device by another inmate who had actually worked with the individual

concerning a GPS placement and the legality thereof."  (ECF No. 66 at 2.)

In light of this, Petitioner explains that he requested that counsel

pursue this matter, but "no matter how much Petitioner tried to persuade

counsel of the validity thereof, [counsel] chose to ignore this issue and was

more concerned about Petitioner's entering a plea of guilty."  (ECF No. 66

at 2.)  Petitioner asserts that he was "fully aware of the issue both before

and during the appeal process." (*Id*.)  Petitioner's self-described legal

acumen undermines the credibility of his assertion that he was coerced

into entering a guilty plea as a result of counsel's lack of familiarity with the

issue.  Nonetheless, the court will consider the merits of the purported

claim.

When counsel's alleged ineffectiveness involves a failure to

competently litigate a Fourth Amendment claim, in order to demonstrate

actual prejudice, the defendant must prove that his Fourth Amendment

claim is meritorious and that there is a reasonable probability that the

verdict would have been different absent the excludable evidence.

Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582–83, 91

L. Ed. 2d 305 (1986); Zakrzewski v. McDonough, 455 F.3d 1254, 1260

(11th Cir. 2006).  Regardless of whether a defendant's guilt is established
by the excludable evidence, the proper question is whether the outcome of
the proceedings would have been different had the motion to suppress
been filed and the evidence been excluded.  Jones v. United States, 224
F.3d 1251, 1259 (11th Cir. 2000); Huynh v. King, 95 F.3d 1052, 1058–59
(11th Cir. 1996); Thomas v. Newsome, 821 F.2d 1550, 1552 (11th Cir.
1987); see also Ward v. Dretke, 420 F.3d 479, 488 (5th Cir. 2005).

Assuming *arguendo* that there was no waiver, Murphy has not
established the existence of a viable Fourth Amendment claim that would
have led to the suppression of any of the evidence against him.  As
discussed above, there is no record evidence regarding the alleged
placement of the GPS on Petitioner's vehicle.  Petitioner suggests (without
any evidentiary support) that his mother observed law enforcement place
the GPS on the vehicle, although he offers no other details about the
incident, and the record contains none.  (ECF No. 52 at 3.)  Murphy also
states that "when he became aware of a tracking device was placed on his
vehicle, he alerted counsel to challenge this fact," which suggests that
Murphy did not learn of the placement until after he was arrested and
counsel appeared in this case.  (ECF No. 66 at 1.)

In any event, in July of 2011, at the time of Murphy's plea,

warrantless placement of a tracking device on a vehicle parked in a public

place was not prohibited.  *See, e.g.,* United States v. Michael, 645 F.2d

252, 255–56 (5th Cir. 1981)[1] ("reasonable suspicion is adequate to support

warrantless beeper installation [on the exterior of a vehicle]"); *see also*

United States v. Hernandez, 647 F.3d 216 (5th Cir. 2011) (use of a GPS

device to track defendant was not a search within the meaning of the

Fourth Amendment).   It was not until 2012—after Murphy plead guilty and

was sentenced— that the Supreme Court ruled that attachment of a GPS

tracking device to a vehicle and use of that device to monitor the vehicle's

movements on public streets was a search within the meaning of the

Fourth Amendment. United States v. Jones, 132 S.Ct. 945, 949 (2012).

The Eleventh Circuit noted in a 2010 decision, that Federal Rule of

Criminal Procedure 41(b)(4) establishes the federal procedure for obtaining

a warrant to install a tracking device, although it not applicable to a local

police investigation conducted without federal involvement, which is not the

case here.  United States v. Smith, 387 F. App'x 918, 920 (11th Cir.2010)

---

[1] All cases from the former Fifth Circuit handed down by the close of business on
September 30, 1981, are binding on the Eleventh Circuit.  Bonner v. City of Prichard, 661
F.2d 1206, 1209 (11th Cir. 1981) (en banc).

(citing United States v. Lehder-Rivas, 955 F.2d 1510, 1522 (11th Cir.

1992).  The 2006 Amendment Notes to the Rule 41 clarify that "if the

officers intend to install or use the device in a constitutionally protected

area, they must obtain judicial approval to do so" but if "the officers intend

to install and use the device without implicating any Fourth Amendment

rights, there is no need to obtain the warrant."  Smith, 387 F. App'x at 920.

Because the vehicle in question in Smith was parked in a place easily

accessible to the public, the court concluded that the defendant had no

reasonable expectation of privacy and that the search, i.e. the placement

of the GPS device, was permissible.  Id. at 921.

In a later, unrelated case, the Eleventh Circuit declined to apply the

exclusionary rule to evidence obtained as a result of two warrantless

searches involving the use of GPS tracking devices.  United States v.

Smith, 741 F.3d 1211 (11th Cir. 2013).  The two GPS tracking devices had

been attached to the defendant's vehicle in January of 2011 while the

vehicles were parked in public places.  Smith, 741 F.3d at 1215   The court

concluded that at the time of the GPS searches, the officers reasonably

relied on binding circuit precedent that clearly dictated the constitutionality

of warrantless GPS surveillance based on reasonable suspicion.  Smith,

741 F.3d at 1221.  Petitioner's vague statement regarding what his mother

allegedly observed is not dispositive evidence of where the attachment

occurred and whether a Fourth Amendment violation occurred.

Even if there were no waiver, and Murphy established a Fourth

Amendment violation—and assuming further the evidence obtained as a

result of such violation would have been subject to the exclusionary rule—

to prevail on his claim, Murphy must establish prejudice, that is, that the

results of the proceeding would have been different.  Murphy fails to

explain exactly how the evidence against him would have changed absent

the allegedly unconstitutional placement of the GPS.   Perhaps Murphy

means to suggest that all of the physical evidence seized from the storage

units and his home would have been excluded.  Even if that were the case,

the evidence against Murphy went beyond the drugs, cash and guns

seized from the storage units and his admissions to ownership thereof.

The PSR reflects that by January 27, 2011, Murphy already had been

identified by law enforcement as a multi-kilogram distributor of cocaine in

the Tallahassee area.  (ECF No. 26 at ¶ 9.)   Two cooperating co-

conspirators provided information to law enforcement about their long-term

dealings with Murphy, which were merely corroborated by his own

admissions.  (ECF No. 26, PSR ¶¶ 23–28.)   Murphy's assertion that he

would have proceeded to trial in light of the evidence against him and the

sentence he faced is conclusory and unpersuasive.  *See* Pericles, 567 F.

App'x at 782 (11th Cir. 2014); Rosin,786 F.3d 873; Padilla, 559 U.S. at

372.  Petitioner has pointed to nothing in the record to support his

assertion that the outcome of the proceedings would have been different

had the motion to suppress been filed, and he is not entitled to relief.

As a subpart of his claim, Murphy maintains that appellate counsel

was constitutionally ineffective for failing to challenge law enforcement's

application of the GPS device to his vehicle on appeal.  To prevail on a

claim for ineffective assistance of appellate counsel, a defendant must

show that (1) appellate counsel's performance was deficient, and (2) but

for counsel's deficient performance he would have prevailed on appeal.

Shere v. Sec'y Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008);

*see* Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir.2009) (holding that

claims for ineffective assistance of appellate counsel are governed by the

same standards applied to trial counsel under Strickland v. Washington,

466 U.S. 668, 687 (1984)). Counsel is clearly not ineffective for failing to

raise a meritless issue on appeal.  <u>Shere</u>, 537 F.3d at 1311; <u>Ladd v. Jones</u>, 864 F.2d 108, 110 (11th Cir.1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").  This issue was not raised in the district court and there was no record evidence upon which counsel could have based a successful appellate argument. It follows that Murphy cannot show that counsel was constitutionally ineffective for failing to pursue this issue on appeal.

## CONCLUSION

For all of the foregoing reasons, the Court finds that Murphy has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore the § 2255 motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that

satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (ECF No. 51) should be **DENIED**.

Case Nos.: 4:11cr32/RH/GRJ; 4:13cv236/RH/GRJ

2.  A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 25th day of March, 2016.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**